IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBIN HOLMES,                                              CV. 07-719-HU
                            Plaintiff,

v.                                                         FINDINGS AND
                                                          RECOMMENDATION

MICHAEL J. ASTRUE,
Commissioner of Social Security,
                            Defendant.
_____

HUBEL, Magistrate Judge:

INTRODUCTION

        Plaintiff brings this action for judicial review of a final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying his application for Social Security

disability insurance benefits ("DIB") under Title II of the Social Security Act, and supplemental

security income ("SSI") under Title XVI of the Social Security Act.  This court has jurisdiction

under 42 U.S.C. § 405(g).  For the reasons set forth below, this court recommends that the

Commissioner's decision be affirmed.

PROCEDURAL BACKGROUND

On December 17, 2001, plaintiff filed concurrent applications for DIB and SSI. Those applications were denied initially, and upon reconsideration. A hearing was held before an Administrative Law Judge ("ALJ") who issued an opinion on September 24, 2003, finding plaintiff not disabled. The Appeals Council denied plaintiff's request for review and plaintiff then filed a complaint for judicial review with this court. See CV 04-383-BR. On January 10, 2005, Judge Anna Brown issued an Opinion and Order affirming the Commissioner's determination that plaintiff was not disabled, and was able to return to his past work. Plaintiff's brief fails to mention this court's previous decision finding him not disabled through September 24, 2003, and he continues to allege disability since December 12, 2001.

On September 25, 2003, plaintiff filed new applications for DIB and SSI. The applications was denied initially and upon reconsideration. On August 28, 2006, another hearing was held before a different ALJ. In a decision dated September 29, 2006, the ALJ found plaintiff not disabled and therefore not entitled to benefits. On April 27, 2007, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. On May 16, 2007, plaintiff filed a complaint for judicial review with this court. Under Chavez v. Bowen, 844 F.2d 691 (9th Cir. 1988), the prior ALJ's decision is final and binding with respect to the previously adjudicated period, and also creates a presumption of continuing non-disability thereafter.

BACKGROUND

Plaintiff was 44 years old on the date of the hearing. He received his GED, a diploma in landscaping from the Job Corp, and an Associate of Arts degree in business administration. He

worked in the past as a sewer line laborer, a gas station attendant, a convenience store

clerk/cashier, and a bookkeeper/office manager.  Tr. 84, 146.[1]

Plaintiff alleges disability based on congestive heart failure, seizure disorder, depression,

hemorrhoids, diarrhea, acid reflux disease, confusion, and impaired thinking.  Tr. 83.  He claims

these conditions made him unable to work beginning in December 2001.  He alleges that these

conditions cause an inability to sit, stand or walk for great lengths of time, an inability to lift

much weight or do strenuous activities, an inability to concentrate for long, depression,

weakness, and nausea.  Tr. 83, 131.

Plaintiff testified that he cannot work because of physical limitations, trouble lifting, an

inability to stand or sit for any measurable length of time, the need lie down for chest pain

control, and shortness of breath.  Tr. 285.

## STANDARDS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

423(d)(1)(A).  The initial burden of proof rests upon the claimant to establish his or her

disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122

(1996).  To meet this burden, a claimant must demonstrate an "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected . . . to last for a continuous period of not less than 12

---

[1] Citations are to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

months." 42 U.S.C. §§ 423(d)(1)(A), 1382c (a)(3)(A). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

The Commissioner's denial of a prior application generally creates a rebuttable presumption of non-disability. Schneider v. Comm's of Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000). A claimant may overcome the presumption by proving changed circumstances that indicate greater disability. Chavez, 844 F.2d at 693. Because this court previously found plaintiff not disabled through September 24, 2003, plaintiff must show that his existing impairments worsened, that he developed new impairments that limit his functioning to a greater degree, or that other changed circumstances exist for him to be found disabled. See Lester v. Chater, 81 F.3d 821, 827-28 (9th Cir. 1995).

## MEDICAL RECORDS

The medical records accurately set forth plaintiff's medical history as it relates to his claim. The court has carefully reviewed the records, and they are summarized below.

Page 4 - FINDINGS AND RECOMMENDATION

_____Plaintiff's medical records date back to December 2001 when plaintiff had triple bypass heart surgery.  Tr. 147-156, 191-95.  On December 22, 2001, in his discharge summary, one physician noted that plaintiff's cardiac function had improved dramatically post-surgery, and that his post-operative recovery was unremarkable.  Tr. 147.  In 2002, plaintiff's cardiologist followed up with him on a regular basis and noted that he was depressed, back to smoking one pack of cigarettes per day, and complained of some shortness of breath with minimal activity.  Tr. 177.  This physician also opined that plaintiff could return to work.  Id.  He noted that plaintiff needed to quit smoking, and take aspirin every day in addition to other medication.  An echocardiogram performed in April 2002 showed depressed left ventricular systolic function with left chamber dilatation and no significant valvular pathology.  Tr. 188.  His cardiologist continued to follow plaintiff for coronary artery disease, congestive heart failure and hyperlipidemia, noting that plaintiff needed to exercise and stop smoking.  Tr. 176.  In July 2002, this physician noted that plaintiff was able to walk four miles,  but would get short of breath when he walked uphill, that plaintiff was not complying with a low fat diet because he eats what he can afford, and that he had a significant lack of motivation.  Tr. 173.  Plaintiff's cardiologist noted that plaintiff was frustrated about finances, lack of a job and disability issues on an ongoing basis.

Plaintiff alleges that an anti-depressant caused him to experience seizures.  A CT scan of the head in September 2002 was normal.  Tr. 186.  Plaintiff was placed on Dilantin for seizure control though the record is unclear as to how often he was on and off this medication.

In January 2003, plaintiff had a colonoscopy and polypectomy in which three small polyps were removed.  Tr. 181-83.  The pathology on the colon mucosa and the polyps showed

nothing significant.  Tr. 184-85.  This study also showed small, internal hemorrhoids that were

the likely source of some blood in plaintiff's stool.  Otherwise, the study was normal and

provided no explanation for diarrhea and some short-term weight loss.

In January 2004, plaintiff began treating with a new physician and complained of chest

tightness.  Tr. 250-51.  This physician diagnosed chest pain with exertion, noted a "[n]on-

painful" resting echocardiogram, continued plaintiff on various medications, and started him on

Lexapro for depression.  She noted that he continued to be homeless with no job or income.  In

February 2004, this same physician noted plaintiff's affect was quite flat and increased his

dosage of Lexapro.  Tr. 245-46.

In January and March 2004, DDS reviewing physicians found that plaintiff had an

affective disorder or depression which caused only mild restriction of activities of daily living,

mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration,

persistence or pace, and no episodes of decompensation.  Tr. 201-213.  DDS reviewing

physicians also assessed physical limitations that were adopted by the ALJ in his RFC finding.

Tr. 201-213.  The DDS case summary also noted that there was no new or material evidence in

the record to support a finding that was different from the first ALJ's finding in 2003.

In May 2004, plaintiff's treating physician noted his complaints of chest pain, but that the

pain did not radiate to his jaw or arm, and was not associated with shortness of breath and

lightheadedness.  Tr. 240.  She opined that plaintiff's chest pain was probably due to being out of

shape and not to cardiac problems.  She encouraged plaintiff to increase his activity level, lose

weight and quit smoking.

In August 2004, plaintiff began treating with a family nurse practitioner ("FNP") who

noted that plaintiff had not stopped smoking, was homeless and unemployed.  Tr. 237-38.  She

also noted that he had been out of Dilantin, his seizure medication, for three weeks and had not

had any seizures.  She noted his complaints of continued chest pain, but no shortness of breath.

Plaintiff reported that he did not notice a difference in his mood when taking Lexapro, an anti-

depressant, but that his mother commented that he was more pleasant to be around when he took

Lexapro.  In September 2004, after one month of treatment, this FNP filled out physical and

mental source statements that noted many severe physical limitations and many marked mental

limitations.[2]  Tr. 224-27.

     In January 2005, plaintiff began treating with a new FNP.  Tr. 232-34.  She noted his

various medical conditions and his reluctance to try any new treatments.  Her assessment was

that plaintiff only wanted to take his medications and be left alone.  Other chart notes from

Clackamas County Public Health in 2005 noted a possible mood disorder or adjustment disorder,

and that Lexapro was not proving beneficial for plaintiff.  Tr. 236.  Physicians tried other anti-

depressant medications including Zoloft and Effexor.  Tr. 230-31.  Plaintiff was noted to be

depressed and have a disheveled appearance, but that his speech was fluid and not tangential.  Id.

Chart notes over the years showed that plaintiff took a number of medications including Coreg

for coronary disease, Prinivil for blood pressure, Zocor for high cholesterol, Dilantin for seizure

disorder, Nexium for acid reflux, and various anti-depressants.  Plaintiff's physicians filled out

applications in order for him to receive most of his medications through pharmaceutical

companies that provided prescriptions for indigent patients.

---

[2] The ALJ discredited this statements and plaintiff does not dispute this finding.

DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9ᵗʰ Cir. 1999):

Step One.  The ALJ determines whether claimant is engaged in substantial gainful activity.  If so, claimant is not disabled.  If claimant is not engaged in substantial gainful activity, the ALJ proceeds to evaluate claimant's case under step two.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Step Two.  The ALJ determines whether claimant has one or more severe impairments significantly limiting him from performing basic work activities.  If not, the claimant is not disabled.  If claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).

Step Three.  The ALJ next determines whether claimant's impairment "meets or equals" one of the impairments listed in the Social Security Administration ("SSA") regulations found at 20 C.F.R. Part 404, Subpart P, Appendix 1.  If so, claimant is disabled.  If claimant's impairment does not meet or equal one listed in the regulations, the ALJ's evaluation of claimant's case proceeds under step four.  20 C.F.R. §§ 404.1520(d), 416.920(d).

Step Four.  The ALJ determines whether claimant has sufficient residual functional capacity ("RFC") despite the impairment or various impairments to perform work he or she has done in the past.  If so, claimant is not disabled.  If claimant demonstrates he or she cannot do work performed in the past, the ALJ's evaluation of claimant's case proceeds under step five.  20

C.F.R. §§ 404.1520(e), 416.920(e).

Step Five.  The ALJ determines whether claimant is able to do any other work.  If not, claimant is disabled.  If the ALJ finds claimant is able to do other work, the ALJ must show a significant number of jobs exist in the national economy that claimant can do.  The ALJ may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines found at 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the ALJ demonstrates a significant number of jobs exist in the national economy that claimant can do, claimant is not disabled.  If the ALJ does not meet this burden, claimant is disabled.  20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1).

At steps one through four, the burden of proof is on the claimant.  Tackett, 180 F.3d at 1098.  At step five, the burden shifts to the ALJ to show that the claimant can perform jobs that exist in significant numbers in the national economy.  Id.

THE ALJ'S FINDINGS

At step one, the ALJ found that plaintiff  had not engaged in substantial gainful activity at any time relevant to this decision.  Tr. 11.  This finding is not in dispute.  At step two, the ALJ found that plaintiff had the following severe impairments:  status post coronary artery bypass, coronary artery disease, obesity, a seizure disorder, and depression.  Id.  This finding is not in dispute.  At step three, the ALJ found that none of plaintiff's impairments met or equaled a listing.  Id.  This finding is not in dispute.

In determining residual functional capacity, the ALJ found that plaintiff could lift and carry 20 pounds occasionally, and 10 pounds frequently.  The ALJ found that plaintiff could stand, sit or walk for six hours in an eight-hour workday.  The ALJ found that plaintiff could do

occasional balancing, stooping, crouching or crawling, he could not climb ladders, ropes or scaffolds, but occasionally could climb ramps or stairs.  Id.  The ALJ found that plaintiff should not be exposed to heights or hazardous machinery, and required a sit/stand option to change positions every fifteen minutes.  Id.  This finding is in dispute.

At step four, the ALJ used the vocational expert's testimony to determine that plaintiff could perform his past relevant work as a cashier and an office manager and therefore was not disabled.  Tr. 13.  This finding is in dispute.  In the alternative, the ALJ went on to determine at step five that plaintiff could perform other work as a cashier for payments, a cashier for ticket selling, or an inspector of optical goods.  Id.  This finding is in dispute.

DISCUSSION

Plaintiff contends that the ALJ erred by:  (1) failing to properly determine plaintiff's residual functional capacity ("RFC"); and (2) inadequately developing the record regarding his functional capacity.

I.    Residual Functional Capacity Determination

Plaintiff argues that the ALJ erred on a number of levels in determining plaintiff's RFC.  A claimant's RFC assessment is a determination of what the claimant can still do despite his physical, mental and other limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a).  In determining a claimant's RFC, an ALJ must assess all the evidence including medical reports, and the claimant's and others' descriptions of limitations to determine what capacity the claimant has for work despite his impairments.  Id.  Social Security regulations define RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs."  20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).  In reaching an

Page 10 - FINDINGS AND RECOMMENDATION

RFC determination, an ALJ need not include limitations that are based on a claimant's properly

discredited subjective complaints.  Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).

     A.     Res Judicata Effect of the Previous ALJ Opinion

     Plaintiff contends that the ALJ failed to give proper res judicata consideration to the prior

ALJ opinion.  Under Chavez, 884 F.3d at 693, certain findings in the prior ALJ's decision must

be given res judicata consideration unless new and material evidence is presented.  However, this

court notes that certain errors were made in the first ALJ's decision, errors that Judge Brown

noted and held to be harmless in her 2005 Opinion and Order.  Specifically, the first ALJ

described plaintiff's RFC differently in two separate sections of his decision.  As Judge Brown

noted, the RFC in the "Findings" section of the first ALJ's opinion included the limitation that

plaintiff "should not engage in constant repetitive use of his non-dominant had for gross or find

[sic] manipulation and is limited to simple one to three step tasks.  As noted, however, the record

does not support these limitations, and the Court found they were erroneously included in the

ALJ's decision."  Opinion and Order at 8, 19.  Judge Brown considered both formulations and

ultimately used the RFC as written by the ALJ that did not include the disputed limitations.

Plaintiff argues that because the ALJ's opinion in the instant case found that plaintiff did not

successfully rebut the presumption of continuing non-disability, the presumption remained and

the ALJ here should have used the same RFC as the first ALJ.

     First, this court notes that the ALJ did find two new, severe impairments in the second

opinion:  obesity and seizure disorder.  A finding of new impairment is sufficient to overcome

the presumption of continuing non-disability.  Schneider, 223 F.3d at 973-74.  Thus the ALJ

erred in finding plaintiff had not rebutted the presumption of non-disability, however this error

Page 11 - FINDINGS AND RECOMMENDATION

was harmless because the ALJ went on to analyze the effects of all of plaintiff's limitations, and the error did not affect the ultimate outcome of this case.  See Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding ALJ error harmless where it did not affect the end result).  After rebutting the presumption of non-disability, the claimant still must prove that he his disabled.  Schneider, 223 F.3d at 974.  The first ALJ's RFC findings should be maintained unless the claimant presents new and material evidence.  Chavez, 844 F.2d at 693-94.  Here, plaintiff has not presented any new or material evidence regarding his limitations, so plaintiff argues that the ALJ in this case erroneously omitted plaintiff's limitation to simple one to three step tasks and the restriction against constant repetitive use of his left non-dominant hand for gross or fine manipulation in his formulation of plaintiff's RFC.  For two reasons, this argument is not persuasive.  First, unlike the ALJ, this court has Judge Brown's opinion ascribing error to the formulation of plaintiff's RFC that included the disputed limitations.  Second, the omission does not effect the ultimate disability determination because, at step five, the ALJ posed a hypothetical to the VE that included these disputed limitations and the VE described other jobs which plaintiff could do with these added limitations.[3]  See Tr. 295-97.  Even if the ALJ had included these disputed limitations in plaintiff's RFC as required by Chavez but contraindicated by Judge Brown's opinion, the finding of non-disability would have remained the same.  The ALJ's finding that plaintiff is not disabled should be affirmed.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir.

---

[3] Plaintiff argues in another section of his brief that this court cannot review the alternative jobs identified by the VE in response to one of the ALJ's hypothetical questions because those jobs were not included in the "Findings" section of the ALJ's decision.  Plaintiff cites no authority for this position and this court can find none.  A federal court reviews the Commissioner's final decision to determine if that decision is supported by substantial evidence in the record as a whole.  Andrews, 53 F.3d at 1039.  The ALJ may recite determinations and supporting reasoning in either the findings or the discussion section of an opinion.  Waite v. Bowen, 819 F.2d 1356, 1360 (7th Cir. 1987).

2005) (explaining that an ALJ's decision should not be reversed for harmless errors).

      B.     Consideration of Mental Limitations

      Plaintiff argues the ALJ erred in finding that plaintiff's mental functional capacity had improved since the prior decision and by not including the limitation to simple one to three step tasks in the RFC formulation.  This court disagrees.  First, Judge Brown noted that the ALJ may have erred when he concluded that plaintiff's depression constituted a severe impairment. Opinion and Order at 20 n.4.  Also, plaintiff has failed to present any new evidence of mental impairment, or evidence that his mental condition has deteriorated.  The claimant bears the burden of proving he is disabled.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999).  Thus plaintiff's mental impairment of depression remains unchanged from the time Judge Brown suggested it may not be a severe impairment.  Plaintiff also failed to present any limitations that result from his alleged mental impairment.  Plaintiff's argument boils down to a repetition of errors:  DDS reviewing physicians in the second case relied on the prior ALJ's opinion for their findings, an opinion that a judge of this court already found to be erroneous.  Finally, even if the ALJ erred in finding that plaintiff's mental impairment had improved, the ALJ's inclusion of the disputed limitation of simple one to three step tasks was included in the second hypothetical to the VE who testified that plaintiff could perform other work in the national economy.  Thus plaintiff is not disabled and the ALJ's decision should be affirmed.

      C.     Consideration of Physical Functional Capacity

      Plaintiff argues that the ALJ erred in finding plaintiff's physical functional capacity had improved since the prior decision and by not including the limitation on left hand usage from the prior decision.  This argument fails for the same reasons as plaintiff's mental impairment

argument.  Judge Brown previously found that the prior ALJ's left hand limitation was included erroneously because that limitation lacked support in the record.  Opinion and Order at 19.  Also, plaintiff has provided no new objective medical evidence to support his allegation of greater physical impairment of his left hand.  In any event, plaintiff's left hand limitation was presented to the VE in a hypothetical posed by the ALJ and the VE determined that this limitation, in combination with others, would not preclude plaintiff from all types of employment.  Therefore, even if the ALJ erred in omitting the left hand limitation from his RFC determination, that error was harmless and did not affect the ultimate conclusion in his finding plaintiff not disabled.

> D.    Consideration of Obesity and Seizure Disorder in RFC Determination

Plaintiff argues that the ALJ erred in finding that his functional capacity improved when the ALJ also found that plaintiff had two new impairments, obesity and seizure disorder.  While the ALJ did accept the medical evidence of these two impairments in addition to plaintiff's existing impairments at step two, the step two inquiry is a de minimis screening device.  See Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987).  After finding that the plaintiff's impairments in combination were severe, the ALJ made a negative finding at step three and went on to consider the limitations and restrictions imposed by all of plaintiff's impairments, both severe and not severe.  The plaintiff failed to provide medical evidence supporting limitations caused by obesity or seizure disorder.  However, the ALJ assessed restrictions regarding plaintiff's inability to climb ladders, ropes and scaffolds, an inability to do more than occasional climbing of ramps or stairs, no concentrated exposure to heights or hazardous machinery, only occasional balancing, stooping, crouching or crawling, and a sit/stand option to change position every fifteen minutes. Tr. 11.  This court finds that these restrictions are consistent with the diagnoses of obesity and

seizure disorder such that the ALJ's RFC determination should not be disturbed.

   E.  Plaintiff's Symptom Testimony

   Plaintiff contends the ALJ wrongly rejected his testimony as to his symptoms.  If there is

medical evidence of an underlying impairment, the ALJ may not discredit a claimant's testimony

as to the severity of symptoms merely because they are unsupported by objective medical

evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  "Unless there

is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for

rejecting the claimant's testimony must be 'clear and convincing.'"  Lester, 81 F.3d at 834.

"General findings are insufficient; rather, the ALJ must identify what testimony is not credible

and what evidence undermines the claimant's complaints."  Id.  In weighing a claimant's

credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his

testimony or between his testimony and his conduct, his daily activities, his work record, and

testimony from physicians and third parties concerning the nature, severity, and effect of the

symptoms of which he complains.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996)

(citations omitted).

   Here, the ALJ relied on statements by plaintiff and his brother that showed plaintiff

engaged in regular activities that included living independently, bathing and dressing himself

without assistance, preparing meals, washing dishes, doing laundry, taking out the trash, going

for walks, driving alone, camping and gathering firewood.  Tr. 12.  The ALJ also noted that

plaintiff is able to pay bills, count change, handle a savings account, and use a checkbook.  Id.

The ALJ relied on physician reports to conclude that plaintiff was capable of doing more if

motivated properly.  Tr. 13.  The ALJ utilized all this evidence to conclude that plaintiff's

Page 15 - FINDINGS AND RECOMMENDATION

allegations of excess pain and functional limitations were inconsistent with the objective

evidence of record. A summary of the medical evidence of record appears above does not

support the complaints and limitations plaintiff alleges. Plaintiff's self-reported activities are

inconsistent with his assertions of disability. Plaintiff testified that he grocery shops

independently twice per week, visits friends twice per month, drives a car twice per week, safely

drives in unfamiliar places, walks up to a mile per day, camps out every night because he is

homeless, prepares his own meals, handles his own finances, cleans his campsite and car daily,

and gathers firewood. Tr. 92-98. Plaintiff's brother confirmed some of these activities and had

no knowledge as to others because he and the plaintiff do not see each other with regularity. Tr.

99-106. The ALJ properly found that plaintiff's daily activities were incompatible with the

degree of incapacity the plaintiff alleged.

       Finally, the ALJ noted plaintiff's failure to seek treatment in the year prior to his second

hearing in questioning his credibility. Tr. 13. The ALJ wrote: "Certainly, the claimant would be

receiving medical treatment if he suffered from unrelenting pain and symptoms. The claimant's

failure to seek medical treatment causes the Administrative Law Judge to doubt his complaints."

Id. Plaintiff argues that he did not seek treatment because he could not afford it. Tr. 286. While

an ALJ may properly consider failure to seek treatment as a relevant factor in assessing

credibility of pain testimony, a claimant's inability to afford treatment must not be held against

him. See Smolen, 80 F.3d at 1284. One of plaintiff's physicians opined, however, that

plaintiff's failure to seek treatment was not due to financial reasons. In January 2005, she

reported that plaintiff said he was "doing overall fairly well" with his medications, and further

noted: "He is not interested at this time in further evaluation of his cardiac status. In fact, at this

Page 16 - FINDINGS AND RECOMMENDATION

time all he wants to do is take his medications and be left alone." Tr. 234. Thus the ALJ

appropriately considered plaintiff's failure to seek ongoing medical treatment for his allegedly

serious conditions and symptoms. Because the ALJ identified evidence that undermines

plaintiff's subjective symptom testimony, this ALJ should be affirmed on this issue.

      F.    Consideration of the Effects of Obesity

Plaintiff argues the ALJ committed error in failing to consider his obesity when assessing

his RFC. The ALJ found plaintiff's obesity was a severe impairment at step two, but found that

he did not meet a listing at step three. "Obesity is a complex, chronic disease characterized by

excessive accumulation of body fat." SSR 02-1p.[4] Under SSR 02-1p, ALJs are required to

evaluate obesity in the sequential evaluation process and in assessing RFC. The regulations also

provide that when assessing claims of individuals with obesity, "including when assessing an

individual's residual functional capacity, adjudicators must consider any additional and

cumulative effects of obesity." 20 C.F.R. Ch. III, Pt. 404, Subpart P, Appendix 1, § 1.00 (Q), §

3.00(I).

The ALJ wrote the following:

> The objective medical findings are modest and do not suggest that the claimant
> has any additional limitations other the ones outlined above. The claimant also
> has been noted to be obese, weighing 196 pounds at a height of 68.5 inches
> (Exhibit B-6F p.11).[5] However, treatment records do not show that the claimant
> has vascular congestion, venous insufficiency, restrictive lung disease, or
> persistently elevated  blood pressure readings in excess of 100 millimeters
> diastolic. Also, clinical examinations have not shown significantly elevated pulse
> or respiration rates, a gait disturbance or persistently reduced mobility or range of
> motion (Exhibit B-6F).

---

[4] SSR 02-1p: Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity, 67 Fed. Reg. 177 (September  12, 2002).

[5] Plaintiff testified that his actual weight is 235 pounds. Tr. 286.

Tr. 11. This analysis by the ALJ was adequate consideration of the effects of plaintiff's obesity. Also, the ALJ added restrictions into plaintiff's RFC that would address the effects of obesity, including the limitation to light work, the sit/stand option every fifteen minutes, the restriction on exposure to hazards, and the inability to climb ladders, ropes and scaffolds. Finally, the VE testified that an individual with all of plaintiff's limitations could work. The plaintiff failed to provide medical records or other evidence to support his allegation that obesity caused significant limitations not addressed. See Burch, 400 F.3d at 684 (finding the ALJ adequately considered claimant's obesity in his RFC determination where the claimant failed to set forth evidence in the record of any functional limitations that result from obesity that the ALJ failed to consider). The ALJ's consideration of the effects of plaintiff's obesity was sufficient.

G.    Consideration of the Effects of Depression

Plaintiff argues the ALJ erred regarding the effects of depression in determining plaintiff's RFC. The ALJ listed depression as a severe impairment at step two, and continued his analysis as required by the sequential evaluation process. The ALJ wrote:

> With regard to the claimant's mental functioning, the medical evidence fails to show that the claimant has any significant mental functioning limitations. There is no evidence which shows that the claimant has required outpatient treatment or hospitalization for any mental impairment. The Administrative Law Judge concludes that the claimant does not have a "severe" mental impairment.

Tr. 12. The ALJ's conclusion is supported by the medical record which fails to show that plaintiff's depression caused any significant limitations in his functioning. No physician opined that plaintiff's depression was severe, and plaintiff points to no evidence to support his allegation regarding the effects of his depression. The ALJ relied on DDS reviewing physicians who did not find that plaintiff had a severe mental impairment. Id. Thus the ALJ relied on substantial

Page 18 - FINDINGS AND RECOMMENDATION

evidence in making his determination regarding the effect of plaintiff's depression on his RFC.

Also, the ALJ's finding is consistent with the prior ALJ's decision and Judge Brown's decision,

both of which determined that plaintiff's depression caused only mild limitations.  Tr. 20;

Opinion and Order at 19-21.

      H.     Consideration of the Effects of Seizure Disorder

      Plaintiff argues the ALJ erred by not properly considering the effects of his seizure

disorder in determining plaintiff's RFC.  The ALJ listed seizure disorder as a severe impairment

at step two, and continued his analysis as required by the sequential evaluation process.  The ALJ

wrote:

> The claimant has been prescribed medication for a seizure disorder.  However, the
> seizures have not been observed by medical personnel, or documented by
> abnormal EEG findings.  There are no clinical findings of neurological deficits
> following any reported seizure.  Further, there is no showing that the claimant's
> seizure are not controllable with appropriate treatment.  The claimant has not been
> hospitalized nor required frequent emergency treatment for seizures.

Tr. 11-12.  The ALJ properly considered the medical evidence of record regarding plaintiff's

seizures and relied on substantial evidence in making his finding.  Plaintiff offered no evidence

to support the allegation that his seizure disorder was severe or that it caused any functional

limitations the ALJ would be required to consider.  Also, the Commissioner notes in his brief

that plaintiff testified at the prior hearing in 2003 that the seizure disorder was brought on by an

anti-depressant and that plaintiff had not had any seizures since he stopped taking that particular

medication.  Finally, the ALJ included restrictions in his formulation of plaintiff's RFC and in

his hypothetical questions to the VE that encompassed limitations that would address an

individual with seizures.  The ALJ's finding regarding the effect of seizure disorder on plaintiff's

RFC was without error and should be affirmed.

Page 19 - FINDINGS AND RECOMMENDATION

II.   Development of the Record

Plaintiff argues that the ALJ failed to fully and fairly develop the record.  The burden of providing a complete record is on the claimant.  20 C.F.R. §§ 404.704, 404.1512, 404.1513. However, the Commissioner shares the burden of developing the record.  DeLorme, 924 F.2d at 849.  The ALJ's duty to fully and fairly develop the record and to assure that the claimant's interests are considered exists even when a claimant is represented by counsel.  Smole, 80 F.3d at 1288 (citing Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)).  The ALJ's duty to develop the record is triggered "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  Mayes v. Massanari, 262 F.3d 963, 968 (9th Cir. 2001) (citing Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001)).

Specifically, plaintiff argues that based on his subjective complaints, the ALJ should have requested a consultative examination to consider his allegations of visual impairment, depression, obesity and seizure disorder.  This court disagrees.  First, the ALJ offered legitimate reasons for questioning plaintiff's credibility as discussed above.  Plaintiff's allegations regarding the severity of his depression, obesity and seizure disorder were addressed above and will not be revisited here.  Also, the ALJ has broad discretion in deciding when to order a consultative examination.  Reed v. Massanari, 270 F.3d 838, 842 (9th Cir. 2001).  The ALJ may decide that a consultative examination is necessary where the evidence as a whole is insufficient to support a decision.  20 C.F.R. §§ 404.1519a(b), 416.919a(b).  Here, the objective evidence before the ALJ was not ambiguous, and the ALJ was able to properly evaluate the evidence and support his decision with evidence from the record.  Also, plaintiff's counsel did not take the opportunity at the hearing to request a consultative examination if he felt one was necessary.  Plaintiff never

Page 20 - FINDINGS AND RECOMMENDATION

complained of visual impairment to any of his physicians, and did not allege visual impairment

in his application for benefits, activities of daily living form, or in his reconsideration disability

report. Tr. 83, 97, 131. Plaintiff's testimony at his hearing is the only evidence in the record

regarding his vision problems. Tr. 284. However, plaintiff's testimony alone is insufficient to

establish an impairment. 20 C.F.R. §§ 404.1508, 416.908. Because the ALJ's duty to develop

the record further was not triggered, the ALJ's decision should be affirmed.

CONCLUSION

For the foregoing reasons, the Commissioner's determination that plaintiff was not

disabled was based on correct legal standards and supported by substantial evidence. The

Commissioner's final decision should be affirmed. A judgment should be prepared dismissing

this case with prejudice.

SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District

Judge for review. Objections, if any, are due March 3, 2008. If no objections are filed, review of

the Findings and Recommendation will go under advisement on that date. If objections are filed,

a response to the objections is due March 17, 2008, and the review of the Findings and

Recommendation will go under advisement on that date.


Dated this __15th_____ day of February, 2008.


                                        /s/ Dennis James Hubel_____
                                        Honorable Dennis J. Hubel
                                        United States Magistrate Judge


Page 21 - FINDINGS AND RECOMMENDATION